Frank J. Larkins v. Commissioner. Geerge D. Livie v. Commissioner.
Larkins v. Commissioner
Docket Nos. 3542, 3543.
United States Tax Court
1945 Tax Ct. Memo LEXIS 327; 4 T.C.M. (CCH) 81; T.C.M. (RIA) 45029; January 24, 1945
B. Dave Bushaw, Esq., 2015 Dime Bldg., Detroit, Mich., for the petitioners. Melvin S. Huffaker, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings involve income tax deficiencies for 1941 as follows: Docket No.
Petitioner
Deficiency
3542
Frank J. Larkins
$5,189.99
3543
George D. Livie
$5,178.23
The only question in issue, which is common to both proceedings, is whether petitioners' wives were entitled to report in their separate returns one-fourth each of the income from a partnership business which petitioners operated. The cases are joined for the purpose of this opinion, although they were not consolidated for hearing, because the question in issue *328 and most of the important facts are common to both of them. Counsel have stipulated that any of the facts shown by the evidence in the Livie case, the first of the cases to be heard, may be considered in connection with the Larkins case. The same counsel appears for both petitioners. Findings of Fact Petitioner Frank J. Larkins is a resident of Detroit, Michigan, and petitioner George D. Livie is a resident of Pleasant Ridge, Michigan. They filed their income tax returns for 1941 with the collector of internal revenue for the district of Michigan, at Detroit. Petitioners operate a business of manufacturing blue print paper at 248 W. Congress Street, Detroit under the name of Michigan Blue Print & Supply Co. Their operations consist principally of coating or sensitizing blue print paper which they sell to the trade. They conducted the business in corporate form for a number of years, but in 1932 changed to a partnership form. Each of petitioners contributed originally about $1,000 or $1,500 to the business. On May 7, 1934, petitioners entered into a new partnership agreement. The partnership was to continue until 1963, "unless earlier dissolved according to law." Each partner *329 was to draw from the business monthly such sums as might year the net profits or net loss were to be divided equally between them. Upon termination of the partnership, other than by reason of the death of one of the partners, the partnership assets were to be divided equally between them. In the event of the death of either of the partners, the survivor was to take all of the partnership assets, free of all claims of the deceased partner's estate. On November 13, 1936, petitioners and their wives executed an agreement styled "Articles of Agreement" by which they declared their wives to be equal owners with them in the assets of the business and entitled to one-fourth each of the profits. The agreement provided that: "WHEREAS on the second day of January, 1936, George D. Livie did by verbal gift, irrevocably transfer and give to his wife, Jessie Livie, one-half (1/2) of his interest in the Michigan Blue Print & Supply Company, including therein the corpus, income to be derived therefrom, good will, all assets and the right to participate in liquidation as hereinafter provided for, that being a one-quarter (1/4) interest in the entire ownership of the Michigan Blue Print & Supply *330 Company, the said gift being known to and consented to by Frank J. Larkins; and "WHEREAS the aforesaid Frank J. Larkins did, on the first day of August, 1936, by verbal gift, irrevocably transfer and give to his wife, Goldie Larkins, one-half (1/2) of his interest in the Michigan Blue Print & Supply Company including therein the corpus, income to be derived therefrom, good will, all assets and the right to participate in liquidation as hereinafter provided for, that being a one-quarter (1/4) interest in the entire company, which gift and transfer was known to and consented to by the aforesaid George D. Livie and Jessie Livie; * * *" The agreement further provided that petitioners or the survivor would continue to "manage and conduct" the business; that the net profits or loss at the close of each year would be divided equally between "the four beneficial interests herein" and credited or debited to their respective accounts; that upon termination of the business, for any reason except the death of one of the owners, the net assets would be divided equally among the four beneficial interests; and that upon the death of an owner, the surviving owners would take title to the interests *331 of such owner in the assets of the business and within five years, at their convenience, pay to the surviving spouse of such deceased partner one-fourth of the then book value of the assets. Petitioners both filed gift tax returns for 1936, in which they reported gifts to their wives of a one-fourth interest each in the assets and business of the Michigan Blue Print & Supply Company. In his return Larkins reported a gift to his wife of $13,750, representing a one-fourth interest in the business at August 1, 1936. Livie reported a gift of $12,500, representing the value of a one-fourth interest at January 2, 1936. There was no gift tax shown to be due on either return. Also, in his return Larkins reported a gift to his wife in that year of one-half interest in 14 different lots of shares of stock of an aggregate value of $10,000. The schedule of such shares attached to the gift tax return bears the following explanation: "SCHEDULE OF SECURITIES PURCHASED BY FRANK J. LARKINS WITH HIS INDIVIDUAL FUNDS AND TRANSFERRED TO THE NAMES OF FRANK J. LARKINS AND GOLDIE L. LARKINS AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP. and SECURITIES ORIGINALLY PURCHASED BY FRANK J. LARKINS INDIVIDUALLY *332 AND SUBSEQUENTLY TRANSFERRED TO THE NAMES OF HIMSELF AND WIFE AS JOINT TENANTS WITH RIGHTS OF SURVIVORSHIP. * * * * *
NOTE: The values shown above represent total cost at date of purchase or total value at date of gift. All the above securities were held in joint tenancy with right of survivorship." Livie also filed a gift tax return for 1935, in which he reported a gift to his wife of shares of stock of an aggregate value of $5,858.04. Petitioners made no change whatever in the conduct of their business after the alleged gifts to their wives or after the execution of the agreement of November 13, 1936. At all times here material Livie looked after the "inside" or production end of the business, while Larkins looked after the sales and other "outside" work. Livie usually determined the amount of profits to be distributed and the time of the distribution. Both petitioners have a practical knowledge of the blue print business and both possess special skills and trade secrets which have been material factors in their success. The earnings of the business are attributable largely to petitioners' personal efforts. The physical assets consist principally of machinery and equipment *333 of a value of not more than $3,000 or $4,000, and current stocks of paper and materials. As of January 1, 1937, separate proprietary accounts and drawing accounts were set up on the books of the partnership for petitioners and their wives. Each of the proprietary accounts was credited with the amount of $709.56. There was also set up a "Management Salaries" account, as of October 31, 1940, to which petitioners' salaries of $300 per month each were debited during the taxable year 1941. This account shows a single credit of $7,200 as of December 31, 1941. Also, for 1941 the drawing accounts of petitioners and their wives all show the same debits and credits. There were debits of $2,000 on February 28; $2,250 on May 2; $1,500 on June 13; $1,500 on July 31; and $3,000 on October 31. These entries were balanced by a credit of $10,250 on December 31, 1941. Neither of petitioners' wives ever performed any services of note on behalf of the partnership business. Most of the property owned by petitioners and their wives is held jointly. Larkins and his wife have a joint checking account at the National Bank of Detroit and several savings accounts in other banks. All of the checks which *334 they received from the business were deposited in their joint checking account. Their financial transactions are all handled by Larkins personally. He receives and deposits all of their checks from the partnership business and pays all of their debts. His wife has never taken any part in such matters. She does not have a regular allowance but asks her husband for money whenever she needs it. The financial affairs of Livie and his wife were handled in substantially the same manner. A partnership return (form 1064) was filed on behalf of the partnership for 1941 which showed a net profit of $54,012.37. Petitioners each reported partnership income of $15,303.09 in their individual income tax returns for that year, while the wives reported in their separate returns $11,703.09 each. The amounts reported by petitioners included partnership salaries of $3,600 per year each. The respondent determined in his deficiency notices that petitioners were taxable on the partnership income reported by their respective wives, and made other minor adjustments not here in controversy. here in controversy. Opinion The only question for our determination is whether petitioners' wives were entitled *335 to report their alleged equal shares of the earnings of the partnership in their separate returns. It is petitioners' contention that their wives became the beneficial owners of a one-fourth interest each in the assets and earnings of the business, either by reason of the agreement of November 13, 1936, or by reason of the alleged "verbal gifts" of such one-fourth interests theretofore made to them. The agreement of November 13, 1936, does not purport to be a partnership agreement and petitioners do not contend here that their wives were actually partners with them in the business. Business partnerships between husbands and wives were not fully recognized by the laws of the State of Michigan prior to 1942. In essence, the agreement in question amounted to no more than a declaration or promise on the part of petitioners that they would divide the earnings of the business which they were then operating under the partnership agreement of May 7, 1934, equally with their wives, and upon termination of the partnership distribute proportional interests in the assets of the business to them. In effect, it was an equitable assignment of one-half of the partnership earnings to the wives. *336 Such an assignment does not relieve the partners of liability for taxes on the earnings of a partnership. ; . Generally income is taxable to the one who earns it. ; ; . Thus, as shown, it would not dispose of our question here even if we should recognize the bona fides, and validity, of the alleged "verbal gifts" by petitioners to their wives of equal interests in the assets and future earnings of the business. Upon that question, however, we express no opinion. We might say in passing that the evidence shows very little about the details of the alleged gifts. Petitioners were vague in their testimony about the time and the circumstances under which they were made. It is not shown that they relinquished any of their control over or rights in the property of the partnership. The important facts are that in the taxable year 1941 petitioners themselves operated the business according to their own wishes, just as they had done for a number of prior years, and *337 exercised complete control over it. Their wives rendered no services whatever and contributed no capital of their own, unless we consider as their contribution the assets of the business which petitioners claim to have given them. The evidence offers no basis for calculating what portion, if any, of the earnings of the business the wives might be equitably entitled to by reason of their ownership of undivided interests in the assets. The evidence does indicate, however, as we have found above, that substantially all of the earnings were due to the personal services of the petitioners. In circumstances such as those present here we have declined to recognize the validity or effectiveness for tax purposes of partnerships between husbands and wives, even where such partnerships had been formed in strict compliance with the letter of the laws governing their creation. See ; ; ; ; . See also ; ; *338 certiorari denied, ; . In , the Supreme Court said, in speaking of family trusts: * * * where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22 (a) is concerned. As to the trust there under consideration the court found that "We have at best a temporary reallocation of income within an intimate family group," which could not be recognized for the purpose of section 22 (a). We know of no reason why the device of a family partnership for the purpose of reallocating income within a family group should be any more entitled to recognition for the purpose of section 22 (a) than the device of a family trust. We are of the opinion that the respondent committed no error in holding petitioners liable as equal partners on all of the income of the partnership. Decisions will be entered for the respondent.